HARVEY SMITH ET AL. v. CHAUNCEY SMITH ET AL.

*Setting aside conveyance— Undue influence—Mental incapacity— Evidence.*

The bill in this case is filed to set aside a deed executed by a father to his son, on the grounds of undue influence and the mental incapacity of the grantor. And it is held that a case has been made out upon complainants' theory by a great preponderance of evidence, showing sufficient grounds for setting aside the deed.

Appeal from Cass. (O'Hara, J.) Argued January 7, 1892. Decided February 5, 1892.

Bill to set aside a deed on the grounds of undue influ-
90 MICH.—7.

ence and the mental incapacity of the grantor. Com-
plainants appeal. Decree reversed, and one entered in
this Court as prayed. The facts are stated in the opinion.

*Spafford Tryon* (*Harsen D. Smith,* of counsel), for com-
plainants.

*A. J. Smith,* for defendant Hiram Smith.

*Howell & Carr,* for defendant Wing.

LONG, J.   This bill is filed to set aside a deed made
by Samuel Smith to his son Chauncey Smith, on the
ground of undue influence and the mental incapacity of
the grantor.   The deed is a quitclaim, and was made on
the 6th day of October, 1873.

The bill is filed by Frances Smith, the widow of Sam-
uel Smith, and all their children, except Chauncey and
Hiram, who are made defendants, together with Walter G.
Wing, who claims to be a *bona fide* purchaser of a por-
tion of the premises, which consist of 40 acres of land
in Cass county, worth about $1,600.

The answer of Chauncey Smith denies all undue influ-
ence, and the mental incapacity of Samuel Smith, and
alleges that the deed in question was given in considera-
tion of $400 loaned to Samuel Smith 10 years before.
Hiram Smith, who is charged in the bill with assisting
his brother in procuring the deed, and to whom Chaun-
cey afterwards deeded one-half of the land, put in a sep-
arate answer, denying generally the material allegations
of the bill; and the other defendant, Walter G. Wing,
files an answer, claiming to be a *bona fide* purchaser of
one-half of the premises for the consideration of $800.

On the hearing below the court found that the deed
was made for and upon a good and sufficient considera-
tion, and that Samuel Smith was then of sound mind

and competent to make said deed, and that the deed conveyed to Chauncey all the interest which Samuel had in the land. The court further found that the complainants had failed to prove any of the material allegations in the bill, and dismissed the bill, except as to Frances Smith, and as to her it was dismissed except as to her dower interest in the land, the court ordering the appointment of commissioners to set off and apportion her dower. It was further ordered that the defendants recover their costs against the complainants, except Frances Smith, and, as between her and the defendants, no costs were awarded.

It appears from the record that Samuel Smith was a farmer, residing in Cass county, where he died in July, 1888, at the age of 77 years. He enlisted in the army in the fall of 1861, and at that time was a man in good health. The title to the farm of 80 acres was in his wife. He had formerly held the title, and had deeded it to one James Girt sometime in 1852, and Girt deeded it to Mrs. Smith. At the time of his enlistment the defendant Chauncey accompanied him to Kalamazoo, enlisting in the same company. He was about 18 years of age, and continued in the service about $3\frac{1}{2}$ years. Samuel returned from the army in September, 1862, much impaired in health, being discharged on account of sickness. When he reached home he was quite feeble, his constitution broken and health gone. Soon after his return he was attacked with epileptic fits, which afflicted him during the remainder of his life. He was a man of very intemperate habits, and apparently this greatly aggravated his malady. He was, at times, a man of ungovernable temper and quarrelsome. After Chauncey returned from the army, he and Hiram often gave their father liquor, against the remonstrances of their mother. Some time after the return of Samuel from the army, at his

urgent request, Mrs. Smith deeded to him 40 acres of the home farm. This is the land in controversy.

During the year 1873, being the year that the deed was made by Samuel to Chauncey, and for some time prior to this, it appears that Samuel's physical condition had become such that he was unable to do any kind of work, and his mental condition such that it became a subject of remark in the neighborhood. He had ceased to do work and was unfit to do business. The witnesses for the complainants, who are apparently wholly disinterested, say that he was unfit to do any kind of business, and his mental faculties so weak that he could easily be imposed upon. It is proved without contradiction that Chauncey, with the aid of Hiram, got his father to his house to stay with him, and afterwards, and while in this weak mental and physical condition, obtained from him the deed.

The testimony of Mrs. Smith shows that Samuel came home from the war ruined in health; that he had two epileptic fits the day after his return; and that he continued to have them every three or four weeks, and sometimes would have four in succession. She says that after having had these fits for a time he would scarcely remember anything; could not remember whether he had eaten; could not remember his children either by their looks or by their names, nor remember where they lived; when they came home he would ask who they were; that he frequently did not remember his nearest neighbors. Mrs. Smith gives many instances of his forgetfulness and lack of mental capacity during the year 1873.

After Chauncey had got the deed, Samuel stayed with him about nine months, when he and Hiram wanted to have Mrs. Smith take him home. Hiram came over, and said he was crazy, and, if she did not take him and care for him, he would send him to the insane asylum. Sam-

uel was taken back after this to his home with Mrs. Smith.

The children of Mrs. Smith corroborate their mother as to their father's mental unsoundness during this time, and detail many instances of his mental aberration. We need not go over this in detail. Their testimony is corroborated by many of the near neighbors, who also give many instances of like character, showing Samuel's unsoundness of mind. While this is contradicted in many particulars by Chauncey and Hiram and others of their neighbors, we are satisfied that the clear weight of the evidence supports the claim of the complainants that Samuel, at the time of the execution of this deed, was so afflicted with his mental disorders that he was unable to comprehend the act of making the deed. The circumstances surrounding the transaction are very peculiar, and the conduct of Chauncey and Hiram at the time the deed was made and their treatment of their father are not very commendable. After securing the deed, Chauncey deeded one-half of the land to Hiram, and thereafter deeded the other half to the defendant Walter G. Wing. Hiram does not claim to be an innocent purchaser, but defendant Wing does.

Chauncey claims to have paid value for the land. His claim is that after his enlistment with his father, and while at Kalamazoo, in 1861, an arrangement was made between him and his father that he should let his father have his money, in consideration of which his father should let him have this 40 acres of land; that he paid his father $26 at that time, and from time to time sent him other money, until he had put into his hands something over $400. He seeks to corroborate this story by a Mr. Munger, who attempts to detail the whole circumstances of the arrangement; just how it was made; that he was called to witness it; and how the money was paid,

and what was thereafter to be paid. The story is most remarkable, and so incredible that I am compelled to say that no reliance should be placed upon it. At that time Samuel did not own a foot of land, and after Chauncey returned from the army, and after his father did 'get the land, he made no effort to have his father carry out any such arrangement. It is probably true that he let his father have some money, the amount of which he has stated at different times at different amounts. His mother claims that, when Chauncey claimed his father owed him on his return from the army, she arranged the indebtedness by letting Chauncey have the use of the farm for a time. She is corroborated in this by the testimony of some of the other children, and their story is the more probable

Chauncey and Hiram, after their father had been at Chauncey's for a length of time, and after the deed was procured, sought to get their father off their hands. It is shown that to do this they went to a revival meeting, making a pretended profession of religion, and asked their mother's forgiveness for what they had done. Their mother was a member of the church. It is testified that Chauncey said afterwards that it was done for the purpose of getting their mother to take their father back, and take care of him. After Samuel returned to his home, after giving the deed and during the next year, he filed a bill in the circuit| court for Cass county, in chancery, to set aside the deed. Issue was joined in this case, and it is shown that the old gentleman was induced to drop the case because he could not show by Hiram, as he claimed he could, that Chauncey stole the deed from him. This bill was filed before Wing obtained his deed from Chauncey.

The testimony, we think, conclusively shows that Wing had notice and knowledge that claim was made that

Chauncey had defrauded his father out of the land. His attention was called to this fact before his pretended purchase, so that if he paid any value for the land, which is thrown in some doubt, he was put upon inquiry as to the manner in which Chauncey obtained it.

We have carefully read the testimony, and we cannot escape the conviction that Samuel Smith was in such a weakened condition mentally that he was easily persuaded by Chauncey, and that it was not his free act in making the conveyance. Chauncey was in the habit of giving him liquor. He got him to his home, away from the influence of his wife and other children, obtained the deed, and then, after a pretended confession of religion, got his mother to take him back, and she maintained and supported him during the remainder of his life. During all this time, from 1873 to 1888, when Samuel died, Chauncey scarcely recognized him. From the whole record we think it would be most inequitable to permit Chauncey and Hiram and defendant Wing to hold this land. A case has been made upon complainants' theory by a great preponderance of evidence, showing sufficient ground for the deed to be set aside.

The decree of the court below must be reversed, and decree entered here in favor of the complainants, setting the deed aside in accordance with the prayer of the bill, with costs of both courts to complainants.

The other Justices concurred.